# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

DAVID CLUM, JR.                                                                                    PETITIONER
Reg. #20962-075

v.                                          2:18cv00028-KGB-JJV

GENE BEASLEY, Warden                                                                RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.  The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. PROCEDURAL HISTORY

On October 29, 2012, a jury in the Southern District of Florida convicted Petitioner, David Clum, of one count of conspiracy to defraud the United States and forty-one counts of making false claims against the United States. (Doc. No. 10-1 at 1.) The court imposed judgment on February 1, 2013, sentencing him to 293 months of incarceration. (*Id.* at 2.) Mr. Clum appealed the conviction to the United States Court of Appeals for the Eleventh Circuit, and the judgment was affirmed on April 13, 2015. In affirming the conviction, the court recited the facts of the case as follows:

> Peters and Clum met at a tax-protestor seminar on the use of IRS Form 1099–OID to obtain refunds from the government. Some tax protesters believe that the government maintains secret trust accounts for citizens, which can be accessed through filing tax forms such as Form 1099–OID. That tax form is an income-reporting document, similar to a W–2, which is normally used for debt instruments that are sold at an "original issue discount." Because the instrument is purchased for less than it will be worth at maturity, the amount of OID is considered taxable income. In contrast, tax protesters use Form 1099–OID to receive large refunds by treating all of a taxpayer's expenses and personal debt obligations as "interest income" ("OID Theory"). Because the form also indicates that taxes were withheld on the "income" amounts, a refund is due to the taxpayer. After the seminar, Peters and Clum discussed potential business opportunities using the OID Theory.

In early December 2008, Clum appeared on a radio show hosted by Beiter to discuss the OID Theory. The following week, Clum appeared on another episode of the same radio show and invited listeners to call in. Clum and Beiter became acquainted with codefendant Penny Jones, when she called the radio show, introduced herself as a tax professional, and expressed interest in the OID Theory. That same month, Beiter, Clum, Peters, and Jones incorporated PMDD Services ("PMDD"). Through this company, the defendants perpetuated a tax-fraud scheme by creating and sometimes filing fraudulent 1099–OID forms with the Internal Revenue Service ("IRS") on behalf of recruited clients. The forms reported fabricated income and tax withholding and allowed the defendants to claim false tax refunds.

To recruit clients for their scheme, the defendants hosted two seminars: one in December 2008, where they met codefendant Marrero, and a second in January 2009. About twenty people attended each seminar to learn about the OID Theory and the services PMDD offered. The invitees were promised large payments using 1099–OID forms and were assured the process was legal.

The defendants successfully recruited a number of clients through the seminars. Through PMDD's 1099–OID process, the clients were told the IRS would refund their expenses from the previous three years, including any mortgage or automobile-loan payments. The clients again were assured incorrectly the process was legal.

Before filing forms on behalf of the recruited clients, Clum volunteered as a test subject and submitted frivolous 1099–OID forms in his name. After the test run and throughout the scheme, Clum, Beiter, and Peters revised their procedures to streamline their scam.

Each defendant also participated in other ways. Clum and Beiter recruited clients. Beiter also managed PMDD's bank accounts. Peters developed the company's computer software, designed e-mails sent to clients, and created the company's client worksheet through which they collected client information. He also signed documents as an authorized agent of PMDD, provided technical assistance to clients, assigned client identification numbers, and processed client information needed by Jones to produce the tax forms. Marrero, though not a partner in PMDD, recruited clients through a referral agreement.

The procedures developed by Clum, Beiter, and Peters required each client to sign a nonsolicitation agreement, a nondisclosure agreement, a power of attorney authorizing PMDD to speak to the IRS on the client's behalf, and a services agreement, promising to pay PMDD's $750 preparation fee, plus a ten-percent commission of any tax refund the client recovered. The defendants also required each client to complete a fourteen-page information worksheet, listing mortgages, loans, lines of credit, and credit cards. After collecting client information, Jones, an enrolled tax preparer with the IRS, electronically filed some of the false 1099–OID

forms. Because of the large number of forms the IRS processes each year, some of the false 1099–OID forms went unnoticed and refunds were paid.

At various points throughout the scheme, each defendant either was contacted directly by the IRS or was forwarded letters by clients, whom the IRS had contacted. Despite warning letters regarding the falsity of their 1099–OID filings, the defendants were undeterred. They continued perpetuating the scheme and prevented clients from defecting by assuring them the IRS letters were empty threats to keep citizens from seeking their legal refunds. They also instructed clients how to avoid the IRS's collection efforts of the paid refunds.

The forms Jones submitted on behalf of over 400 clients requested $166,676,471 in tax refunds. Twenty-four of the submitted forms resulted in payments totaling $7,151,182. When a client received a refund, PMDD collected a ten-percent commission. If the refund was for a client that Marrero recruited, PMDD paid him a small portion of the ten-percent commission fee. Marrero also collected $250 from each of his recruited clients directly.

The IRS began investigating PMDD in 2009. Because PMDD was under scrutiny, the defendants incorporated a successor company, Forever Grace, to continue the scheme. Despite the name change, Forever Grace's operations and the defendants' roles within Forever Grace were the same as with PMDD. The defendants also changed their e-mail addresses to remove any reference to OID because they thought it would draw attention. Instead, the defendants used email addresses that referenced PMDD to give clients comfort that Forever Grace was still the same operation.

Clum, Beiter, and Peters profited approximately $89,600, $97,400, and $38,600, respectively. Through his recruiting arrangement with PMDD, Marrero profited approximately $17,191 from the scheme. Marrero also profited by submitting fraudulent tax forms in his name. In May 2010, Marrero prepared tax forms for 2007, 2008, and 2009 and reported fabricated gambling winnings. He mailed the three forms to three different IRS service centers in Missouri, Texas, and California. From these three forms, Marrero requested a tax refund totaling $279,635. Marrero received a fraudulent refund of $90,369, which he quickly removed from his bank account through a series of large cash withdrawals.

*United States v. Clum*, 607 Fed. Appx. 922, 924-926 (11th Cir. 2015).

On November 14, 2016, Mr. Clum filed a 28 U.S.C. § 2241 petition for writ of habeas corpus in this Court. *Clum v. Rivera,* 2:16CV00149-KGB. That petition was determined to be a 28 U.S.C. § 2255 petition to vacate his sentence in the Southern District of Florida and was

4

transferred. The trial court denied Mr. Clum's petition and denied a certificate of appealability. (Docs. No. 10-1, 10-2.)

Now, Mr. Clum, an inmate at the Forrest City Low Federal Correctional Institution, again seeks relief from this Court through the filing of a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. (Doc. No. 1.) In turn, Respondent argues Mr. Clum's Petition should be denied because his only recourse is to seek review by the United States Court of Appeals for the Eleventh Circuit. Mr. Clum has replied and the matter is ripe for a decision. After careful consideration of the pleadings in this case, for the following reasons, I find this Court lacks jurisdiction and recommend the Petition be dismissed.

## II. ANALYSIS

Like his last case before this Court, Mr. Clum's instant claims relate to his conviction and sentence from the Southern District of Florida. And inmates seeking to challenge the lawfulness of the imposition of their federal convictions and sentences must generally bring a 28 U.S.C. § 2255 petition to the sentencing court. *Abdullah v. Hedrick*, 392 F.3d 957, 959 (8th Cir. 2004). Because a § 2255 petition attacks the validity of the conviction or sentence, it is a "further step in the movant's criminal case," and subject matter jurisdiction lies with the convicting and sentencing court. *DeSimone v. Lacy*, 805 F.2d 321, 323 (8th Cir. 1986); *Thompson v. Smith*, 719 F.2d 938, 940 (8th Cir. 1983). In contrast, a § 2241 habeas corpus petition attacks the execution of a sentence, or the manner in which the sentence is being carried out, and is properly brought before the court presiding in the judicial district where the prisoner is incarcerated. *Matheny v. Morrison*, 307 F.3d 709, 711-12 (8th Cir. 2002); *DeSimone*, 805 F.2d at 323; *Nichols v. Symmes*, 553 F.3d 647, 649 (8th Cir. 2009). Based upon the arguments set forth in the Petition, it is clear that Mr.

Clum is continuing to argue about the validity of his conviction and sentence, rather than the manner in which his sentence is being carried out.

Mr. Clum had his day in court on these claims. The trial court thoroughly considered his claims and found them to be without merit. (Doc. No. 10-1.) And as Mr. Clum knows, it is his burden to demonstrate that § 2255 relief in the sentencing court would be unavailable or ineffective. *DeSimone*, 805 F.2d at 323 (quoting *Von Ludwitz v. Ralston,* 716 F.2d 528, 529 (8th Cir. 1983) (per curiam)). In establishing such a requirement, the United States Court of Appeals for the Eighth Circuit has clearly stated:

> Significantly, in order to establish a remedy is "inadequate or ineffective" under § 2255, there must be more than a procedural barrier to bringing a § 2255 petition. This court has held a § 2255 motion is not 'inadequate or ineffective' merely because: (1) "§ 2255 relief has already been denied," (2) "[the] petitioner has been denied permission to file a second or successive § 2255 motion," (3) "a second or successive § 2255 motion has been dismissed," or (4) "[the] petitioner has allowed the one year statute of limitations and/or grace period to expire."

*Hill v. Morrison*, 349 F.3d 1089, 1091 (8th Cir. 2003) (citing *United States v. Lurie*, 207 F.3d 1075, 1077 (8th Cir. 2000)).

The situation described in *Morrison* applies in this case. For this Court to be permitted to invoke jurisdiction over these claims, Mr. Clum must prove the inadequacy or ineffectiveness of seeking § 2255 relief from the sentencing court. *Abdullah v. Hedrick*, 392 F.3d 957, 959 (8th Cir. 2004); *Hill,* 349 F.3d at 1091. As Respondent points out, having tried and failed at a § 2255 petition in the Southern District of Florida does not automatically render such a petition ineffective or inadequate as a matter of law. Mr. Clum's next step is to seek permission from the United States Court of Appeals for the Eleventh Circuit to file an appeal of his § 2255 petition to present the claims he sets forth here.

Mr. Clum's claims of "actual innocence" are also unavailing. The "savings clause" in § 2255 may only be applied in cases in which a prisoner asserts a claim of "actual innocence" if

he has "never had an unobstructed procedural opportunity to raise the claim [of actual innocence]." *Abdullah v. Hedrick*, 392 F.3d 957, 960 (8th Cir. 2004). Here, Mr. Clum has been afforded an "unobstructed procedural opportunity" to raise his claim of actual innocence in his direct appeal and through his § 2255 petition before the Southern District of Florida. So the "savings clause" is not available to him. In transferring his previous case to the district of his conviction, this Court previously stated,

> Finally, Mr. Clum contends his case falls within the "savings" clause of § 2255(e) because his procedural opportunity was continuously obstructed. To qualify under the savings clause, Mr. Clum must both claim his actual innocence and show the absence of an unobstructed procedural opportunity to raise the claim. *Abdullah*, 392 F.3d at 960. Mr. Clum argues that such obstruction occurred, at least in part, when the judge who presided over his criminal trial purportedly erred in making credibility determinations and refused to grant a new trial when a new party came forward to testify (Dkt. No. 13, at 6, 7). As pointed out in the Recommended Disposition, there is no evidence that Mr. Clum has continuously been "obstructed" from raising his claims. On appeal, the Eleventh Circuit affirmed Mr. Clum's conviction, and the Supreme Court later denied his petition for a writ of certiorari (Dkt. No. 10, at 2). Given this procedural history, the Court rejects Mr. Clum's argument that his procedural opportunity to raise his claims was obstructed.

*Clum v. Rivera*, 2:16CV00149-KGB, Doc. No. 22 at 3-4.

Accordingly, I find this Court lacks jurisdiction and this Petition should be dismissed. Because Mr. Clum has already unsuccessfully sought § 2255 relief, he must petition the Eleventh Circuit for the opportunity to have his claims heard. Therefore, I recommend dismissal of Mr. Clum's Petition.

### III.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that the Petition for Writ of Habeas Corpus (Doc. No. 1) be dismissed for lack of jurisdiction.

DATED this 27th day of April, 2018.

                                                                          JOE J. VOLPE
                                                                          UNITED STATES MAGISTRATE JUDGE